**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph P. Kealy, et al., | ) No. CV-05-0911-PHX-FJM |
| Plaintiffs, | ) **ORDER** |
| vs. | ) |
| Carolina Casualty Ins. Co., et al., | ) |
| Defendants. | ) |

**I**

The court has before it defendants' motion for summary judgment (doc. 24), plaintiffs' response (doc. 27) and cross-motion for summary judgment (doc. 26), defendants' response and reply (doc. 31), and plaintiffs' reply (doc. 33).

**I**

This action involves a question of coverage under a directors and officers liability insurance policy (the "Policy") issued by defendant Carolina Casualty Insurance Company ("Carolina"). Defendant Monitor Liability Managers, Inc. ("Monitor") is the managing underwriting agent for Carolina. In general the Policy provides indemnification for loss arising out of claims against the directors and officers of International FiberCom, Inc. ("FiberCom") and its subsidiaries. Plaintiffs, who are former officers and directors of FiberCom, are seeking coverage under the Policy in connection with two lawsuits filed

1  against them.[1]  The first lawsuit was filed by Henry Wojtunik ("Wojtunik"), the sole
2  shareholder of Anacom Systems Company, which became a wholly-owned subsidiary of
3  FiberCom in February 2001.  The parties dispute whether Wojtunik was employed as the
4  president of the new subsidiary, International FiberCom-ANA, Inc. ("FiberCom-ANA") after
5  the merger.

6  The second lawsuit was filed by William Delgado ("Delgado").  It is undisputed that
7  after the merger of All Star Telecom, Inc. with FiberCom in April 1999, Delgado became
8  president of a wholly-owned subsidiary, International FiberCom-AST, Inc. ("FiberCom-
9  AST"). Both the Wojtunik and Delgado lawsuits (the "lawsuits") allege that the directors and
10 officers of FiberCom failed to provide adequate consideration in connection with the
11 respective mergers.

## II

13 Plaintiffs now seek coverage under the Policy for loss arising from the lawsuits.[2]
14 Carolina denied coverage under the Policy's "insured vs. insured" exclusion, which excludes
15 coverage for any loss in connection with claims against any "Insured" by "Directors or
16 Officers."  Policy, Exclusion IV.F, at 4.  According to Carolina, because Wojtunik and
17 Delgado are former officers of FiberCom subsidiaries, any loss arising from their claims is
18 excluded from coverage.

---

[1] Plaintiffs Janet Kealy and Pam Bauman are seeking coverage under the Policy as spouses of former directors and officers of FiberCom.

[2] Plaintiffs seek summary judgment on the duty of defendants to defend and/or advance defense costs in both the Wojtunik and Delgado lawsuits.  The duty to indemnify is moot as to the Delgado lawsuit because Delgado dismissed his lawsuit with prejudice, and as to certain defendants in the Wojtunik lawsuit who were also dismissed from that action with prejudice. PSSOF at 1 (doc. 34).
We note that on December 4, 2006, Wojtunik and the remaining defendants in the Wojtunik lawsuit entered into a Damron settlement agreement, whereby Wojtunik was assigned all rights, claims and causes of action, including claims and rights arising out of the present action, with the exception of the right to collect attorneys fees and costs. Id. On December 19, 2006, final judgment was entered in favor of Wojtunik in the Wojtunik lawsuit. Id.

- 2 -

Exclusion IV.F provides in relevant part:

> The insurer shall not be liable to make any payment for Loss in connection with a Claim made against any Insured:
>
> F. by, or on behalf of, or in the right of the Company, or by any of the Directors or Officers; provided, however, this exclusion does not apply to:
>
> 1. any Claim by any security holder of the Company, whether directly or derivatively, but only if such Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured or the Company.

It is undisputed that "directors and officers" include former directors and officers, and that "Company" includes the parent organization, as well as its subsidiaries. It is further undisputed that both Wojtunik and Delgado are security holders, and that Delgado is a former officer of the Company. The dispute between the parties lies in (1) whether coverage is excluded under the Policy because Wojtunik is a former officer of the Company; (2) whether Wojtunik's status as "employee" serves to exclude coverage under Exclusion IV.F by virtue of Endorsement 1283115; and (3) whether Wojtunik and Delgado's status as "security holders" falls within the exception to the exclusion, as set forth in IV.F(1) (hereinafter "Exception 1").

### III

### A

We first consider whether Wojtunik was an officer of FiberCom-ANA.[3] The Policy defines "Directors and Officers" as "duly elected or appointed directors or officers of the Company." Policy, Definitions III.E. Plaintiffs assert that Wojtunik was not an officer of FiberCom-ANA and therefore the insured v. insured exclusion does not apply.

Under Arizona law, a "corporation shall have the officers described in its bylaws or appointed by the board of directors in accordance with the bylaws." A.R.S. § 10-840(A).

---

[3] Plaintiffs acknowledge that Delgado was the president of FiberCom-AST. DSOF ¶ 46.

- 3 -

1  The FiberCom-ANA bylaws provide that any officer, including the president, "shall be
2  elected annually by the Board." PSOF ¶ 14.

3  Plaintiffs rely on corporate documents to establish that Joseph Kealy, rather than
4  Wojtunik, served as president of FiberCom-ANA during the relevant time frame. Corporate
5  documents show that the board elected Kealy as the initial president on February 5, 2001,
6  PSOF, Exhibit 4; he was granted authority in his role as president on March 8, 2001, POSF,
7  Exhibit 5; he was elected to continue as president by the board of directors on June 14, 2001,
8  id.; his status as president was ratified by the board on October 31, 2001, id.; and on
9  February 13, 2002, Kealy resigned as president of FiberCom-ANA, id. Moreover, Wojtunik
10 himself states that he never served as president. PSOF, Exhibit 6.

11 In contrast, defendants contend that Wojtunik's status as an officer is established by
12 an employment agreement between FiberCom-ANA and Wojtunik following the merger,
13 which names Wojtunik as "president." DSOF, Exhibit H-4. In addition, defendants rely on
14 various merger and bankruptcy documents that reference this employment agreement, but
15 do not otherwise confirm Wojtunik's position.

16 The designation of Wojtunik as president in the employment agreement is insufficient
17 under the FiberCom-ANA bylaws to render him a "duly elected or appointed" officer.
18 Instead, the bylaws provide that an officer of the company must be "elected annually by the
19 Board." All actions taken by the board and memorialized in its corporate documents
20 demonstrate the election of Joseph Kealy, not Wojtunik, as president of FiberCom-ANA.
21 Authorizing the company generally to enter into the employment agreement, without express
22 reference to Wojtunik or his title, DOSF, Exhibit H-13, does not supersede the Board's
23 express actions.

24 Therefore, defendants have failed to establish that Wojtunik was the duly elected
25 president of FiberCom-ANA, and we conclude that Exclusion IV.F does not preclude
26 coverage on this basis.

27
28

**B**

Defendants argue alternatively that even if Wojtunik was not an officer of the company, his status as "employee" is sufficient to trigger Exclusion IV.F.  Endorsement 1283115 ("Endorsement") amends the definition of "Directors and Officers" with respect to "Securities Claims" to include "employees," thereby expanding coverage of securities claims to include employees.  Defendants contend, and plaintiffs do not dispute, that the Wojtunik and Delgado lawsuits are "Securities Claims" within the meaning of the Policy.  The question, then, is whether, by virtue of the Endorsement, Exclusion IV.F also includes "employees," such that Wojtunik's status as "employee" serves to exclude coverage for his claims.

Plaintiffs argue that defendants either waived their right to assert the Endorsement as a defense to coverage, or should be judicially estopped from doing so.  They assert that defendants' reservation of rights was based on Wojtunik's status as an officer and that they were never informed that coverage would also be denied on the basis of his status as an employee.  They further contend that their decision not to enter into a Damron[4] settlement with Wojtunik in March 2005, was based in part on their understanding that defendants were denying coverage on Wojtunik's status as president.  PSOF ¶ 50.

"An insurer with a coverage defense must defend its insured under a properly communicated reservation of rights or it will lose its right to later litigate coverage." United Servs. Auto. Ass'n v. Morris, 154 Ariz. 113, 116, 741 P.2d 246, 249 (1987).  The notice of the reservation of rights must "fairly inform[ ] the insured of the insurer's position." Equity Gen. Ins. Co. v. C & A Realty Co., 148 Ariz. 515, 518-19, 715 P.2d 768, 771-72 (Ct. App. 1985) (finding that reservation of rights letter was "clear and unambiguous and adequately informed anyone of average intelligence that [the insurer] was claiming policy defenses").

Estoppel "refers to a preclusion from asserting a right by an insurer where it would be inequitable to permit the assertion."  McCollum v. Continental Cas. Co., 151 Ariz. 492,

---

[4]See Damron v. Sledge, 105 Ariz. 151, 460 P.2d 997 (1969).

- 5 -

1   495, 728 P.2d 1242, 1245 (Ct. App. 1986). It "rests upon acts, statements or conduct on the
2   part of the insurer or its agents which lead or induce the insured, in justifiable reliance
3   thereupon, to act or forbear to act to his prejudice." Id. Waiver, on the other hand, is the
4   intentional relinquishment or abandonment of a known right. Id. "It is unilateral in that it
5   arises out of either action or nonaction on the part of the insurer . . . and rests upon
6   circumstances indicating . . . that the relinquishment of the right was voluntarily intended by
7   the insurer with full knowledge of all of the facts pertaining thereto." Id.

8         Defendants argue that they reserved the right to deny coverage under Exclusion IV.F,
9   and that Exclusion IV.F necessarily includes the definition of "Directors and Officers," as
10  expanded by the Endorsement, to include "employees" in the context of a "Securities Claim."
11  They contend that a definition underlying the Exclusion should not be considered a separate
12  defense–instead, the same defense applies for multiple reasons.

13        But defendants did not simply deny coverage on the basis of Exclusion IV.F. Instead,
14  they specifically denied coverage based on Wojtunik's status as president. Plaintiffs had only
15  this knowledge in assessing the strengths and weaknesses of their coverage claim, and
16  concomitantly whether to enter into a Damron settlement. They did not have the benefit of
17  knowing that defendants would also challenge coverage under the Endorsement, based on
18  Wojtunik's status as employee.  Therefore, we conclude that defendants are properly
19  estopped from asserting the Endorsement as a defense to coverage. Moreover, defendants
20  knew that Wojtunik was an employee and further they are presumed to have knowledge of
21  every provision in their own Policy. Their voluntary decision not to rely on the Endorsement
22  as a basis to deny coverage in their reservation of rights, and subsequent communications,
23  constitutes a waiver of the opportunity to assert that defense now. This conclusion comports
24  with A.R.S. § 20-461(A)(15), which imposes upon insurance companies an obligation to
25  "promptly provide a reasonable explanation of the basis in the insurance policy relative to
26  the facts or applicable law for denial of a claim or for the offer of a compromise settlement."

27
28

1    In sum, we conclude that defendants have failed to establish the applicability of
2 Exclusion IV.F to preclude coverage of loss arising from the Wojtunik lawsuit. Therefore,
3 coverage is available for such loss.

## IV

5    Because the parties agree that Delgado was an officer of FiberCom-AST, the relevant
6 question is whether the Delgado claim fits within Exception 1 to Exclusion IV.F. Although
7 Exclusion IV.F precludes coverage for claims by officers or directors against other officers
8 or directors, Exception 1 creates an exception to this exclusion for loss in connection with
9 claims by directors or officers when (1) the director or officer is also a security holder of the
10 company, and (2) the claim "is instigated and continued totally independent of, and totally
11 without the solicitation of, or assistance of, or active participation of, or intervention of, any
12 Insured or the Company." Plaintiffs assert that Delgado is a security holder of the Company,
13 that his claims are independent of any insured, and therefore the Delgado lawsuit falls within
14 Exception 1.

15    Arizona law governs the interpretation of the Policy. "The terms of the insurance
16 policy should be given a practical and reasonable construction which support the intent of
17 the parties." Stearns-Roger Corp. v. Hartford Acc. & Indem. Co., 117 Ariz. 162, 165, 571
18 P.2d 659, 662 (1977). Whether a contract of insurance is ambiguous is a question of law.
19 Roberts v. State Farm Fire & Cas. Co., 146 Ariz. 284, 286, 705 P.2d 1335, 1337 (1985). If
20 an insurance contract provision is not ambiguous, we will construe it according to its plain
21 and ordinary meaning. Travelers Indem. Co. v. State, 140 Ariz. 194, 197, 680 P.2d 1255,
22 1258 (Ct. App. 1984). An ambiguity exists when the language of the policy is unclear and
23 could be construed in more than one sense. Id.

24    Defendants argue that Exception 1 does not cover claims by Delgado, even if he is a
25 shareholder, because Delgado is an "Insured" under Definition III.G of the Policy ("Insured"
26 includes "any Directors and Officers"). According to defendants, because Delgado himself
27 brought the lawsuit at issue, by definition the claim was "instigated and continued by an
28 Insured," and therefore is not a covered claim under Exception 1.

1    Plaintiffs counter that this interpretation renders Exclusion I meaningless because
2 there is no Director or Officer who is also not an "Insured." Instead, plaintiffs suggest that
3 the only way to interpret Exception 1 as having any effect is to read "any Insured" as "any
4 insured other than the insured bringing the action." Plaintiffs' Response at 4 n.4. We
5 conclude that this interpretation unnecessarily modifies the plain language of the Policy.
6 Instead, we agree with defendants that Exception 1 has substantive meaning in that it allows
7 shareholder derivative claims or claims in which directors or officers "are included in a class
8 of security holder plaintiffs, but they are only included by virtue of their status as
9 shareholders, and they are not actively participating as litigants." Defendants' Response at
10 9. For example, in Harris v. Gulf Ins. Co., 297 F. Supp. 2d 1220 (N.D. Cal. 2003), the court
11 held that two officers' responses to questions by plaintiffs in a securities fraud class action
12 did not amount to "assistance" by an officer such that the claim fell within the insured v.
13 insured exclusion. Instead, the court stated the exclusion bars coverage "only if a director
14 or officer actively and voluntarily provided substantial aid or help to a . . . plaintiff with the
15 intent to aid the prosecution of the lawsuit in order to obtain an economic benefit." Id. 1226

16    Here, Delgado was not simply an officer who was part of a class of plaintiff security
17 holders. Rather, he was the sole plaintiff who instigated and continued the lawsuit himself.
18 The plain language of Exception 1 excludes from coverage such a claim.

19    Therefore, we conclude that the claims associated with the Delgado lawsuit fall within
20 Exclusion IV.F, and any loss associated with such claims are excluded from coverage under
21 the Policy.

**V**

23    Finally, defendants contend that Monitor, the managing underwriting agent for
24 Carolina, is not the insurer under the Policy and as such plaintiffs' claims against Monitor for
25 insurance coverage should be dismissed. Plaintiffs assert that they are not seeking insurance
26 coverage from Monitor, but instead are asserting their bad faith claim against Monitor as well
27 as Carolina, and that the bad faith claims are not the subject of defendants' motion for
28 summary judgment.

We deny defendants' motion for summary judgment in favor of Monitor based on the proposition that Monitor is not the insurer under the Policy. We further reject defendants' attempt to create an argument for summary judgment on the bad faith claims, raised for the first time in their response and reply (doc. 31). We note that, contrary to defendants' argument, see id. at 15, our coverage determination is not dispositive of plaintiffs' bad faith claims. See Zilisch v. State Farm Mut. Auto. Ins. Co., 196 Ariz 234, 238, 995 P.2d 276, 280 (2000) (holding that "the insurer's eventual performance of the express covenant–by paying the claim–does not release it from liability for 'bad faith' ") (citation omitted). Rather, "if an insurer acts unreasonably in the manner in which it processes a claim, it will be held liable for bad faith "without regard to its ultimate merits." ' Id. (quoting Deese v. State Farm Mut. Auto. Ins. Co., 172 Ariz. 504, 509, 838 P.2d 1265, 1270 (1992)).

## VI

Based on the foregoing, **IT IS ORDERED DENYING** defendants' motion for summary judgment (doc. 24) and **GRANTING** plaintiffs' motion for summary judgment (doc. 26) with respect to coverage of loss arising from the Wojtunik lawsuit.

**IT IS FURTHER ORDERED GRANTING** defendants' motion for summary judgment (doc. 24) and **DENYING** plaintiffs' motion for summary judgment (doc. 26) with respect to coverage of loss arising from the Delgado lawsuit.

**IT IS FURTHER ORDERED DENYING** defendants' motion for summary judgment (doc. 24) in favor of Monitor.

DATED this 16th day of January, 2007.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge